Booth, Chief Justice,
delivered the opinion of the court:
The special jurisdictional act set out in Finding 1 enables the plaintiff to sue in this court for an alleged infringement of his patent rights. Plaintiff obtained letters patent on July 11, 1911, for an improvement in steam pumps, confined to the valve mechanism of such pumps. The detail of construction andt successful functioning of the device is accurately described in Findings 4 and 12. We find the patent valid and that it has been infringed by the defendant.
The crucial issue in the case is not confined to the issues of the validity and infringement of the patent in suit. The plaintiff may not recover a judgment because under the following facts the defendant possessed at least a nonexclusive license to make and use the patented device without paying any compensation therefor.
The plaintiff apparently proceeds upon the theory that when a special jurisdictional act waives in terms the statute of limitations notwithstanding the fact that he was an employee of the United States when he made his invention, a defense is precluded upon any other issues except the validity of the patent and the fact of infringement.
The plaintiff was absolutely without any remedy except an appeal to Congress, until by the passage of the special jurisdictional act this court was given jurisdiction “to hear, adjudicate and render judgment” upon his alleged claim. Under Section 156 of the Judicial Code plaintiff’s claim waS barred by the statute of limitations; and under the provisions of the act of June 25, 1910 (36 Stat. 851), as amended by the act of July 1, 1918 (40 Stat. 704,705), he could not invoke the jurisdiction of this court in patent cases because at the time he made his patent he was an employee of the United States.
The legal effect attributable to the removal of these obstacles extends no further than to permit the plaintiff to prosecute his suit in a provided judicial forum. Congress repeals pro tanto the limitations to the court’s patent jurisdiction and allows the plaintiff to come into court and *371 prove, if it may be done, his legal right to compensation for the use of his patented device, under the same conditions applicable to an ordinary infringement case.
Special jurisdictional acts are to be strictly construed. The court, in the absence of pertinent provisions to that effect, may not extend them to include equitable or moral obligations not founded upon existing principles of established law. If Congress intended to waive more than existing obstacles to the court’s jurisdiction in this class of cases apt language to do so would have been employed.
The provisions of the special jurisdictional act in this case do not indicate any intention to remove available defenses to plaintiff’s cause of action. The report of the committee of Congress with respect to the enactment of the statute confirms this statement. This report is made an appendix to this opinion. In the case of Schillinger v. United States, 155 U. S. 163, 166, the court said:
The United States can not be sued in their courts without their consent, and in granting such consent Congress has an absolute discretion to specify the cases and contingencies in which the liability of the Government is submitted to the courts for judicial determination. Beyond the letter of such consent, the courts may not go, no matter how beneficial they may deem or in fact might be their possession of a larger jurisdiction over the liabilities of the government.
See also Stanton v. United States, 68 C. Cls. 379; Shearer v. United States, No. 41829, decided March 7, 1938, ante, p. 40.
The plaintiff first entered the service of the United States as a marine engineer and boiler draftsman on February 13, 1903, and was at once placed in charge of the drafting room of the Bureau of Steam Engineering at the Boston Navy Yard. On June 1, 1905, he was promoted to the position of technical assistant to then Lieut. William S. Moore. Plaintiff was skilled in the art of pump construction and his superior ability in this respect was availed of by his commanding officer.
*372 Contemporaneous with plaintiff’s entry into the Government service the Navy was confronted with difficulties in operating Navy steam launches. The use of lubricating oil in the boiler feed pumps in connection with the steam engines had proved unsatisfactory because the oil collected in the boilers and caused rapid deterioration. The pumps then in use would not operate without the use of the oil, and the problem was to conceive a pump wherein the use of the oil could be dispensed with. It was not one of easy solution.
Lieutenant Moore was assigned the task of attempting to design a pump which would overcome the imperfections of the ones in use. Moore doubted his ability to perform the same, and after conferences with the plaintiff assigned to him the duty of performing what he himself had been assigned to do. The plaintiff made drawings of a pump construction substantially the same as the patent in suit, and his conceptions and woi’k met with approval.
April 16, 1906, plaintiff’s conception of a satisfactory pump, evidenced by his drawings, was constructed and tested by placing the same upon the Commandant’s launch at the Navy Yard. It proved to be eminently satisfactory. It was a conspicuous success and pumps of plaintiff’s design were rapidly manufactured at the Navy Yard and used to the, exclusion of the old ones previously in use.
April 15, 1908, plaintiff filed his application for the patent in suit. The patent issued, as before stated, on July 11, 1911, and the defendant manufactured and used steam pumps which we think clearly embodied and infringed the valve mechanism of which the plaintiff was the sole and original inventor. The plaintiff was in the Government service as a marine engineer and boiler draftsman from February 13,1903, until August 31, 1910.
' The record indisputably establishes that plaintiff conceived his patented valve in the course of his regular and official duties as a Government employee, and that all expense incidental to drawing his plans, constructing his design, and manufacturing and testing the same was borne by the línited States. No fact of record establishes that *373 prior to that date plaintiff bad or contemplated tbe valve construction developed subsequent to bis entry into tbe Government service.
Where one in the service of tbe Government is assigned tbe duty of developing a particular mechanism and he performs the same during his working hours, using tbe facilities and materials of bis employer to do so, incurring no expense, and subsequently procures a patent for the mechanism so developed, be may not recover from his employer compensation for its manufacture and use. Several judicial precedents sustain this assertion. Solomons v. United States, 137 U. S. 342; Standard Parts v. Peck, 264 U. S. 52; Gill v. United States, 25 C. Cls. 415; Knapp v. United States, 46 C. Cls. 601; United States v. Dubilier Condenser Corp., 289 U. S. 178.
Plaintiff’s petition is dismissed. It is so ordered.
Whaley, Judge; Williams, Judge; LittletoN, Judge; and GeeeN, Judge, concur.
(Note. — Motion for leave to file motion for new trial overruled January 24, 1939.)
APPENDIX
Ist^sion088} HOUSE OE REPRESENTATIVES {^642
GEOEGE B. GATES -
Abril 10,1935. — Committed to the Committee of the Whole House and ordered to he printed
Mr. Kennedy of Maryland, from the Committee on Claims, submitted the following
EEPOET
(To accompany H. R. 670)
The Committee on Claims, to whom was referred the bill (H. E. 670) conferring jurisdiction in the Court of Claims to hear and determine the claim of George B. Gates, having considered the same, report thereon with the recommendation that it do pass.
*374 STATEMENT Or FACTS
This bill proposes to confer jurisdiction on the Court of Claims to determine the merits of the claim of George B. Gates with, respect to the use of a certain patent covered by Letters Patent No. 997616, issued by the Patent Office July 11,1911. The claim arises out of an infringement of a steam pump patent by the Navy Department, and it has heretofore been referred to the Court of Claims under the Judicial Code by a resolution of the Senate dated February 9, 1920.
At the completion of the testimony at that time, both sides closed their case and the court sent it to a commissioner sitting as master for findings of fact. However, the testimony showed that one element of the invention covered by the letters patent was devised during the time the claimant was an employee of the Government. The act of June 25, 1910, as amended July 1, 1918, made the jurisdiction of the court ineffective, and the present bill is a cure.
The Navy Department interposes no objection to granting jurisdiction of the Court of Claims to pass upon the merits of the claim “as the Congress has heretofore by the passage of the resolution of February 9, 1920, indicated its willingness to give the claimant his day in court.” The report of the Navy Department is appended hereto.
Navy Department,

'Washington, May 86,1938.

The ChaxRmaN, Committee on Claims,

Mouse of Representatives, Washington, D. G. ’

My Dear Mr. Chairman : Replying further to the committee’s letter of May 21, 1932, transmitting a bill (H. R. 9717) conferring jurisdiction in the Court of Claims to hear and determine the claim of George B. Gates, and requesting the opinion of the Navy Department thereon, I have the honor to inform you as follows:.
The purpose of the proposed legislation is to confer jurisdiction on the Court of Claims to hear and determine the claim of George B. Gates for compensation for the use and manufacture by or for the United States of an invention covered by Letters Patent No. 997616 issued by the Patent Office July 11, 1911, without regard to the statute of limitations; notwithstanding the fact that the claimant was an employee of the United States at the time he made the invention and regardless of the provisions of the act of June 25, 1910, as amended by the act approved July 1, 1918.
The bill further provides that the claims now pending before the Court of Claims pursuant to Senate resolution con *375 sidered and agreed to February 9, 1920, be dismissed; provided, however, that the testimony and exhibits heretofore adduced on behalf of the claimant and the defendant constitute the record in the present claim for the decision, by the Court of Claims.
The cost of the proposed legislation is indeterminate.
In view, of the foregoing and as the Congress has heretofore by the passage of the resolution of February 9, 1920, indicated its willingness to give the claimant his day in court, the Navy Department has no objection to granting jurisdiction to the Court of Claims to pass upon the merits of the claim, and therefore interposes no objection to the enactment of the bill H. B,. 12188.
Sincerely yours,
C. F. Adams, Secretary of the Navy.